STATE of Missouri, Respondent,

v.

Jess HANEY, Appellant.

No. 44556.

Supreme Court of Missouri, Division No. 2.

Nov. 14, 1955.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 12, 1955.

**418**

Moss H. Silverforb, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Jess Haney appeals from a judgment convicting him of the offense of larceny of a motor vehicle under which he was sentenced to imprisonment in the penitentiary for a term of five years in accordance with the verdict. The crime is alleged to have been committed in Texas County where the prosecution was instituted, but, on change of venue, the case was transferred to, and tried in, the Circuit Court of Phelps County. The errors charged relate to (1) the sufficiency of the information, and (2) the sufficiency of the evidence; (3) the propriety of giving instruction C–1, and (4) the prosecutor's argument.

The first question for determination is whether the information is fatally defective (as contended by defendant) because of its omission to charge the value of the motor vehicle to be thirty dollars or more, and because it fails to disclose the serial, motor and title certificate numbers of the car alleged to have been stolen, which is described as "a 1937 Plymouth Coach, the personal property of Randolph Truitt." The statute whereon the charge is founded is Section 560.165 RSMo 1949, and V.A.M.S. (other statutory references, if any, will be to the same revision), reading as follows: "Any person who shall be convicted of feloniously stealing, taking or carrying away any motor vehicle, or any part, tire or equipment of a motor vehicle of a value of thirty dollars or more, or any person who shall be convicted of attempting to feloniously steal, take or carry away any such motor vehicle, part, tire or equipment, shall be guilty of a felony and shall be punished by imprisonment in the penitentiary for a term not exceeding twenty-five years or by confinement in the county jail not exceeding one year, or by fine not exceeding one thousand dollars or by both such fine and imprisonment."

Defendant's interpretation of the statute would require that it be read as if the comma following the words "any motor vehicle" were omitted, and the phrase "of a value of thirty dollars or more" interpolated, thus: "Any person who shall be convicted of feloniously stealing, taking or carrying away any motor vehicle of a value of thirty dollars or more, or any part, tire or equipment of a value of thirty dollars or more * * * shall be guilty," etc. The statute does not so read, nor is there anything to suggest that such meaning was ever intended. Its plain provisions and also the obvious considerations of public policy in its enactment are to the contrary. We may take judicial notice that the cost of new automobiles has always been many, many times thirty dollars, and *that depreciation does not ordinarily reach* such a fantastic low, at least while the car is yet in running order—the sum just mentioned being relatively a near approach to total extinction in value. With this in mind, it does not seem plausible that the legislature intended that the value of a motor vehicle stolen should govern or affect the question of offense or no offense. We *think it obvious, and so hold, that the portion* of the statute under discussion was directed against the larceny of *"any* motor vehicle," which means, of course, without regard to value. It is only with relation to the larceny (or attempted larceny) of "any part, tire or equipment of a motor vehicle" that the value provision of this section comes into play.

Defendant cites no authorities in support of his contention that the serial, motor and title certificate numbers were required to be averred in the information. Upon the principle involved in, and the authority of, the case of State v. Wahlers, Mo., 56 S.W.2d 26, which arose under a somewhat analogous criminal statute, the

contention must be ruled against defendant. He also challenges the sufficiency of the allegations with respect to the ownership of the automobile. That description is hereinabove set out, and upon the foregoing authority we hold it sufficient to inform the defendant that Randolph Truitt· was the owner. See, also, State v. Mangiaracina, 344 Mo. 99, 125 S.W.2d 58.

The evidence on the part of the state was substantially as follows: Randolph Truitt testified that he was the owner of the car in question, a 1937 Plymouth Coach, and that it was "in fair shape * * * it would run good; run pretty good;" that on the evening of January 12, 1952, he and his wife drove from their farm into Willow Springs to attend the picture show. They arrived about 6:30 p. m., and he parked the car just off Highways 60 and 63 on a side street. After the show he returned to the place where he had parked the car and it was gone, and he so notified the Highway Patrol. He had not given anyone permission to use the car, no one ever paid him for it, and he did not thereafter see the car.

James Smith, who had earlier pleaded guilty to being a party to the theft of the car in question, and who was then undergoing punishment by confinement in Algoa Reformatory for such offense, testified that he and defendant and one Ray Wilson met at Cabool, in Texas County, on the day in question, and at the suggestion of defendant they went to Willow Springs "to get a car;" that the three of them drove to Willow Springs in defendant's 1951 Ford truck, parked the truck and went to a bowling alley, then "Jess [the defendant] he taken off and told us to wait there;" that defendant returned and told them "he had a car" and where it was. The witness further testified that defendant drove it away from the place where it was parked and out on Highway 137, where witness and Wilson got in it and drove the car to defendant's farm in Texas County, where they left it that night, returning the next morning, when the three of them cut the car up and hauled it to St. Louis. On cross-examination, he retracted some of his evidence given on direct, and he thought he didn't

drive the Plymouth away; that it was a Pontiac, and not one that had been stolen; that the only reason he had told this story [originally] was so that he would get a parole; that he (witness) did not steal the car, and he "didn't think" defendant had turned over to him a 1937 Plymouth to drive to the farm.

Lieutenant Taylor, of the Highway Patrol, testified that he was present in the prosecutor's office when defendant was questioned concerning the theft of the Truitt car, and that defendant at that time stated he and Ray Wilson and James Smith went to Willow Springs in his truck, parked the truck * * * that they divided, but he got the Plymouth, drove it up to 137 Highway, and the other two boys drove it on to his place in Texas County. The testimony of Sergeant Barkley, of the Highway Patrol, who was likewise present, was to the same effect.

Defendant took the stand and denied having made the statements attributed to him by the highway patrolmen, and finally, but not until on second re-direct examination did he deny having stolen the car in question. He admitted three previous convictions, and stated that he was in the business of salvaging automobiles—cutting them up and sending the junk to St. Louis. His only other witness, Kenneth Wilson, a brother of Ray, testified he was employed by defendant at the time in question, his work consisting of helping cut up cars and loading the junk in trucks to haul off to St. Louis. He denied that there was ever a 1937 Plymouth Coach cut up while he was working there.

█ Upon a consideration of the foregoing facts, we entertain no doubt whatever as to their sufficiency to make a case for the jury, and so there was no error in the overruling of defendant's motions for judgment of acquittal offered at the close of the state's evidence and at the close of all the evidence.

█ The only assignment in the motion for new trial with respect to instruction C-1 was that it "assumed the value of the

automobile, if any, was more than $30.00." We fail to find that the instruction made such an assumption. It is true there was no direct evidence touching the value of the car, but, notwithstanding this, the instruction submitted the issue of value in the following language: "and if you further find from the evidence that at said time and place the said 1937 Plymouth automobile was the personal property of Randolph Truitt, and of the value of *thirty dollars or more,* you will find the defendant guilty," etc. Having held that value is not an ingredient of the offense, it necessarily follows that proof thereof need not be made. Consequently, the words of the instruction italicized above became mere *surplusage,* and, being such, we fail to see how the defendant could have been prejudiced, and so overrule his contention.

■ Although not properly for review because not preserved by the motion for new trial, we take occasion to say there was no error in the instruction with respect to the minimum punishment to be assessed in the event of a verdict of guilty. The statute, § 560.165, specifies such punishment as "imprisonment in the penitentiary for a term not exceeding twenty-five years or by confinement in the county jail not exceeding one year, or by fine not exceeding one thousand dollars or by both such fine and imprisonment." On this subject the instruction told the jury that the punishment ranged from "imprisonment in the state penitentiary for a term of not less than two nor more than twenty-five years, or by confinement in the county jail for any period not exceeding one year, or by a fine in any sum not exceeding One Thousand Dollars, or by both such fine and imprisonment." Defendant's complaint is that "there is no provision for a minimum of two years in the state penitentiary as set forth in this instruction." This contention overlooks the following provision of § 546.-490: "but no person shall in any case be sentenced to imprisonment in the penitentiary for any term less than two years." It was therefore not error to so instruct the jury.

■ Defendant's final point is that certain statements of the prosecutor in his closing argument were so inflammatory and prejudicial as to necessitate a new trial. We set forth in haec verba the whole of the record on which the foregoing claim is based:

"And there are a lot of things that have been said here as to why it is that this action was brought in Texas County. Let me put a little example to you: Let us assume this: Let us assume that here in Phelps County you have a man that is in the salvage business and let us assume that there has been a number of old junker cars or practically junker cars, that have been stolen, and let us assume further that this man who runs the salvage yard in Rolla, in Phelps County, is a man that has been taking these cars, and let us assume that some of them had been brought in—

"Mr Fuller: If the Court please we object to that line of argument.

"Mr. Moore: It is purely an assumption, your Honor.

"Mr. Shockley: That is what we object to.

"The Court: On what grounds?

"Mr. Fuller: I object to it. It is just given to prejudice this jury as to the theft of other cars, and has nothing to do with this case being tried.

"The Court: Overruled."

The quoted portion of the prosecutor's argument is so incomplete as to leave in doubt what was intended. His statements were apparently by way of answer to some statement or argument previously made in the case. It will be noted that no request for a mistrial was made at the time. The trial court was in better position to know of the purpose and probable effect of the prosecutor's argument, so in the circumstances here present we defer to its judgment in the matter. Viewing the cold record alone, we fail to find anything in the remarks sufficient to establish prejudice

against defendant; certainly nothing calling for a new trial.

In conformity with our duty under rule 28.02, 42 V.A.M.S., we have also examined the verdict, judgment and sentence even though error has not been assigned thereon, and we find them regular and sufficient. Judgment affirmed.

All concur.